## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 21 2019, 9:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Cristin L. Just | Curtis T. Hill, Jr. |
| Crown Point, Indiana | Attorney General of Indiana |
| | Robert J. Henke |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Termination of the Parent-Child Relationship of S.M. (minor child); | November 21, 2019 |
| | Court of Appeals Case No. 19A-JT-924 |
| H.M. (Mother), | Appeal from the Jasper Circuit Court |
| *Appellant-Respondent,* | The Honorable John D. Potter, Judge |
| v. | Trial Court Cause No. 37C01-1810-JT-237 |
| The Indiana Department of Child Services, | |
| *Appellee-Petitioner.* | |

**Pyle, Judge.**

# Statement of the Case

H.M. ("Mother") appeals the termination of the parent-child relationship with her daughter, S.M., ("S.M."), claiming that the Department of Child Services ("DCS") failed to prove by clear and convincing evidence that: (1) there is a reasonable probability that the conditions that resulted in S.M.'s removal will not be remedied; (2) termination of the parent-child relationship is in S.M.'s best interests; and (3) adoption is a satisfactory plan for S.M.'s care and treatment. Concluding that there is sufficient evidence to support the trial court's decision to terminate the parent-child relationship, we affirm the trial court's judgment.[1]

We affirm.

# Issue

Whether there is sufficient evidence to support the termination of the parent-child relationship.

# Facts

The evidence and reasonable inferences that support the judgment reveal that S.M. was born in August 2016. She was removed from Mother's home in July 2017 and placed in foster care after Father and another man became involved in a physical altercation at Mother's home. At that time, the house was dirty and

---

[1] S.M.'s father ("Father") voluntarily relinquished his parental rights in 2018, and he is not a party to this appeal.

had a foul smell, and there was debris and a beer bottle in S.M.'s bedroom. According to DCS, '[t]he home was not up to [a] minimum standard of living[.]" (Tr. Vol. 2 at 14).

[4] The trial court adjudicated S.M. to be a Child in Need of Services ("CHINS") in October 2017. Following the adjudication, the trial court ordered Mother to: (1) maintain safe and stable housing; (2) abstain from drug use; (3) complete a parenting assessment and successfully complete all recommendations; (4) complete a substance abuse assessment and successfully complete all treatment recommendations; (5) submit to random drug screens; (6) complete a domestic violence assessment and successfully complete all recommendations; (7) attend visitation with S.M.; and (8) actively participate in a home-based counseling program.

[5] After Mother failed to comply with the CHINS dispositional order, DCS filed a petition to termination her parental rights in October 2018. Testimony at the March 2019 termination hearing revealed that DCS had been involved with Mother and a son since 2015 for the same reasons that it had become involved with Mother and S.M. In September 2017, during the course of the proceedings with S.M., Mother's son was placed in a guardianship with his maternal aunt.

[6] The testimony further revealed that although Mother had completed parenting, substance abuse, and domestic violence assessments, she had failed to successfully complete the assessors' recommendations. In addition, the testimony revealed that Mother had continued to use marijuana. She had also

either refused to take drug tests or had tested positive. Further, during the course of the proceedings, Mother had attended only slightly more than half of her scheduled supervised visits with S.M. In addition, Mother, who often had to be redirected during visits because she was looking at her cellphone, had never progressed beyond supervised visitation.

[7]     Mother had also failed to obtain stable and suitable housing. At the time of the termination hearing, she had told DCS Family Case Manager Holly Ammann ("FCM Ammann") that she was living with her boyfriend at his grandparents' house. However, during a visit to the home, FCM Ammann had smelled marijuana and had been unable to speak to the homeowners to confirm that Mother lived there and that S.M. was welcome to live there as well. During that visit, Mother had also refused to give FCM Ammann the name of another adult who was present in the home. During the course of the proceedings, Mother had lived at ten different addresses, including the county jail for two days on a battery charge. Mother had often lived with friends who refused to allow DCS to enter their houses. She had also suffered from bouts of homelessness.

[8]     FCM Ammann testified as follows regarding Mother's lack of progress during the CHINS proceedings:

> [T]here have been several services put into place for [Mother.] [S]he has failed to make any progress in any of those . . . services up to this point[.] Not only have we been providing services in this case for the last 18½ months, but we have to remember there was an open CHINS case from 2015 to 2017 where we were

consistently providing the exact same services and that there was
. . . no progress in those case plan goals either.

(Tr. 85-86). FCM Ammann explained as follows regarding her recommendation to terminate Mother's parental rights: "[T]he services and goals put in place . . . to alleviate the reasons for involvement, [Mother's] not made enough progress in those goals to say that those reasons for involvement have been alleviated at this time, continual instability." (Tr. 89). FCM Ammann also testified that it was in S.M.'s best interests to terminate Mother's parental rights and for S.M.'s paternal grandparents to adopt her because S.M. needed permanency and stability.

[9] CASA Marian Paskash ("CASA Paskash") agreed with FCM Ammann that "none of the issues that initially started in this case ha[d] been resolved." (Tr. 130). CASA Paskash also testified that termination of Mother's parental rights and grandparent adoption was in S.M.'s best interests. According to CASA Paskash, paternal grandparents were able to provide S.M. with a "loving, caring and stable home." (Tr. 133).

[10] Following the hearing, the trial court issued a detailed order terminating Mother's parental relationship with S.M. Mother now appeals.

# Decision

[11] Mother argues that there is insufficient evidence to support the termination of her parental rights. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and

raise their children. *In re K.T.K.,* 989 N.E.2d 1225, 1230 (Ind. 2013). However, the law provides for termination of that right when parents are unwilling or unable to meet their parental responsibilities. *In re Bester*, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents but to protect their children. *In re L.S.,* 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[12] When reviewing the termination of parental rights, we will not weigh the evidence or judge the credibility of the witnesses. *K.T.K.*, 989 N.E.2d at 1229. Rather, we consider only the evidence and reasonable inferences that support the judgment. *Id*. Where a trial court has entered findings of fact and conclusions thereon, we will not set aside the trial court's findings or judgment unless clearly erroneous. *Id.* (citing Ind. Trial Rule 52(A)). In determining whether the court's decision to terminate the parent-child relationship is clearly erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment. *Id.* at 1229-30.

[13] A petition to terminate parental rights must allege:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

> > (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> > (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> > (C) that termination is in the best interests of the child; and
>
> > (D) that there is a satisfactory plan for the care and treatment of the child.

IND. CODE § 31-35-2-4(B)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.,* 989 N.E.2d at 1231.

Here, Mother argues that there is insufficient evidence to support the termination of her parental rights. Specifically, she first contends that the evidence is insufficient to show that there is a reasonable probability that the conditions that resulted in S.M.'s removal will not be remedied. In determining whether the conditions that resulted in a child's removal or placement outside the home will not be remedied, we engage in a two-step analysis. *In re E.M.,* 4 N.E.3d 636, 643 (Ind. 2014). We first identify the conditions that led to removal or placement outside the home and then determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* The second step requires trial courts to judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions and balancing any recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* Habitual conduct may include parents' prior criminal

history, drug and alcohol abuse, history of neglect, failure to provide support, and a lack of adequate housing and employment. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1157 (Ind. Ct. App. 2013), *trans. denied*. The trial court may also consider services offered to the parent by DCS and the parent's response to those services as evidence of whether conditions will be remedied. *Id.* Requiring trial courts to give due regard to changed conditions does not preclude them from finding that a parent's past behavior is the best predictor of his future behavior. *E.M.*, 4 N.E.3d at 643.

[15] Here, our review of the evidence reveals that S.M. was adjudicated to be a CHINS in October 2017 because of domestic violence in the home, Mother's drug use, and unstable and inappropriate housing. Nearly two years later, Mother had not successfully completed any of the court-ordered services, was still using drugs, and still had not obtained stable and appropriate housing. Both FCM Ammann and CASA Paskash testified that reasons for S.M.'s removal had not been remedied. This evidence supports the trial court's conclusion that there was a reasonable probability that the conditions that resulted in S.M.'s placement outside the home would not be remedied. We find no error.

[16] Mother also argues that there is insufficient evidence that the termination was in S.M.'s best interests. In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *In re D.D.*, 804 N.E.2d 258, 267 (Ind. Ct. App. 2004), *trans. denied*. In so doing, the court must subordinate the interests of the parents to

those of the child involved. *Id.* Termination of the parent-child relationship is proper where the child's emotional and physical development is threatened. *In re R.S.*, 774 N.E.2d 927, 930 (Ind. Ct. App. 2002), *trans. denied*. "'A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that continuation of the parent-child relationship is contrary to the child's best interest.'" *In re B.D.J.*, 728 N.E.2d 195, 203 (Ind. Ct. App. 2000) (quoting *Matter of Adoption of D.V.H.*, 604 N.E.2d 634, 638 (Ind. Ct. App. 1992), *trans. denied, superseded by rule on other grounds*). Further, the testimony of the service providers may support a finding that termination is in the child's best interests. *McBride v. Monroe Cty. Office of Family and Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003).

[17] Here, our review of the evidence reveals that Mother has historically been unable to provide housing, stability, and supervision for S.M. and was unable to provide the same at the time of the termination hearing. In addition, both FCM Ammann and CASA Paskash testified that termination was in S.M.'s best interests. The testimony of these service providers, as well as the other evidence previously discussed, supports the trial court's conclusion that termination was in S.M.'s best interests.

[18] Last, Mother argues that DCS does not have a satisfactory plan for S.M.'s care and treatment. This Court has previously explained that the plan for the care and treatment of the child need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child

relationship is terminated. *In re L.B.*, 889 N.E.2d 326, 341 (Ind. Ct. App. 2008). Here, the DCS caseworker testified that the plan for the care and treatment of S.M. is adoption. This is a satisfactory plan. See *In re A.N.J.*, 690 N.E.2d 716, 722 (Ind. Ct. App. 1997).

[19] We reverse a termination of parental rights "only upon a showing of 'clear error'—that which leaves us with a definite and firm conviction that a mistake has been made." *Egly v. Blackford Cty. Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1235 (Ind. 1992). We find no such error here and therefore affirm the trial court.

[20] Affirmed.

Robb, J., and Mathias, J., concur.